12644

LEXINGTON WATER POWER CO. v. WINGARD, AND THREE
OTHER CASES

(148 S. E., 366)

*Messrs. Crouch & Ramage, Timmerman & Graham, Efird & Carroll,* and *Elliott & McLain,* for appellant,

*Messrs. D. W. Robinson,* and *D. W. Robinson, Jr.,* for respondents,

420

April 22, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

These four cases were heard together in the Circuit Court, and the appeals in them will be so considered here.

We will confine our attention to the appeal in the case first entitled above, the *Wingard case;* the decision in it will be conclusive of the appeals in the other three cases.

It appears that the Lexington Water Power Company is a public service corporation created and existing under the laws of South Carolina by special Act of the General Assembly, and by the terms of its charter is authorized to build a dam or dams across Saluda River at or near Dreher's Shoals, and to condemn the necessary lands for the erection of said dam and the impounding of water thereby.

Being unable to agree with the defendants upon a price for their lands, the plaintiff instituted condemnation proceedings under Sections 4990 *et seq.,* of Volume 3, Code of 1922. The defendants were served with notice that their lands would be required by the power company for its public and corporate purposes. The defendants served notice upon the power company that they refused to give their consent to entry upon their lands. The power company procured an order from his Honor, Judge De Vore, Judge of the Eleventh Circuit, directing the Clerk of Court of Lexington County to impanel a jury to ascertain the amount of compensation to be paid to the defendants for the lands required by the power company. A jury was impaneled; they heard testimony pro and con; made an investigation and examination of the lands; heard arguments of counsel on both sides; and rendered a verdict fixing the compensation to be paid to the defendants at $11,000. From that verdict both parties appealed to the Circuit Court demand-

ing a trial *de novo* before a jury in that Court. That appeal is still pending in the Court of Common Pleas of Lexington County.

Desiring to take advantage of that portion of Section 4994 which reads as follows: "But in no case of appeal shall the progress of the work of construction be stayed: Provided, The person or corporation requiring the right of way shall deposit with the Clerk of the Court the amount of the verdict from which the appeal is taken," the power company notified the defendants that it would on October 1, 1928, deposit with the Clerk of Court the sum of money awarded to the defendants by the Clerk's jury and would thereupon demand possession of certain portions of defendant's lands in order that the same might be cleared before covering the lands with water. About October 1, 1928, the defendants, through their attorneys, notified the power company that they refused to allow it access to their lands and would consider it a trespasser if it entered thereon.

The power company then deposited with the Clerk of Court the sum of $11,000 and took from him a receipt as follows:

"I hereby acknowledge receipt of the sum of eleven thousand ($11,000.00) dollars paid into my hands by the Lexington Water Power Company; the same being the full amount of the compensation awarded by the condemnation jury empaneled by me in the above entitled matter on the 14th day of August, 1928; and said sum of money is deposited with me, as Clerk of Court, under and pursuant to Section No. 4994, Vol. III, Code of Laws of South Carolina, and is to be held by me as Clerk of Court pending the appeal in said matter or until said sum may be otherwise lawfully disposed of.

"Dated at Lexington, S. C., this 1st day of October, A. D. 1928."

Thereupon, on or about October 9, 1928, petitioner through its agents and servants requested that defendants

allow it to enter upon their lands and clear the same in accordance with petitioner's rights and the aforesaid notice, but the defendants threatened petitioner's agents and servants with violence if they attempted to enter upon said land.

Thereafter, on October 10, 1928, the power company instituted this action in the Court of Common Pleas in Lexington County, against the defendants Mrs. L. R. Wingard *et al.,* alleging in substance, that as a public service corporation, engaged in erecting a dam across Saluda River for the purpose of impounding the waters of said river to be used in the generation of electric current, and authorized by its charter to acquire land for its corporate purposes by condemnation, "where the same is needed and useful for its said business or lies within the water area of the impounded waters of said dam," theretofore instituted and conducted condemnation proceedings against the defendants who owned certain lands claimed to be needed for its business; that the proceedings were instituted in the manner directed by statute; that the jury impaneled by the Clerk of Court, after hearing the evidence adduced, assessed the damages to which the condemnees were entitled at $11,000; that the condemnor in that proceeding gave notice of appeal to the Circuit Court and immediately paid the said assessment into the hands of the Clerk of Court, and was thereby entitled to proceed with its work of utilizing the easement so condemned; that the defendants by show of force and threats have forbidden the condemnor to enter upon said land for any purpose, and have obstructed and prevented the condemnor from enjoying its legal right in the premises.

The condemnor then applied to Hon. J. W. De Vore, Circuit Judge, and obtained from him, on the same day, October 10, 1928, a rule, directed to the defendants requiring them to show cause before his Honor, Judge Henry, on October 17th why they "should not be restrained during the pendency of this action, from in anywise interfering with or molesting the plaintiff, its servants and agents, in

entering upon, clearing, and otherwise using, for its corporate purpose, the lands and premises mentioned and described in the attached complaint," and further ordering "that said defendants, their agents and servants and all other persons acting for or in their behalf be and they hereby are enjoined and restrained, in the meantime and until the further order of this Court, from obstructing, interfering with or preventing in any manner the plaintiff, its servants and agents from entering upon, clearing and otherwise using, for plaintiff's corporate and public purposes, the lands and premises aforesaid."

The defendants made return to the rule raising many questions.

The matter then was heard by his Honor, Judge Henry, who on October 17th filed an order, stating that the question before him was "whether or not the Water Power Company, having appealed from the verdict of the Clerk's jury and being engaged now in prosecuting its appeal (it being also conceded that the landowners had appealed), has the right to deposit in the Clerk's office the amount of the verdict rendered by the Clerk's jury and thereupon enter upon the lands of the respective defendants and engage in its work of clearing up and preparing the lands to be flooded," and holding that "the plaintiff is not entitled to enter upon and take possession or commence its operation or work on the lands of the respective defendants until said defendants have been actually paid or compensation has been actually delivered to the respective landowners"; and further "that under Article 9, Section 20 of the Constitution, which seems to apply to rights of way, the compensation provided therein to be deposited must be first fixed by a jury of a Court of record. And it appearing that the Clerk's juries heretofore empaneled in these cases are not such juries, as has been decided by our Supreme Court"; he accordingly ordered "that the rules to show cause and tem-

porary restraining orders heretofore issued in the above-entitled cases be, and the same are hereby, dismissed." From this order the plaintiff has appealed, and the defendants have submitted additional grounds for sustaining the order.

If the power company had the right, under the circumstances, to insist, in the language of Section 4994, that " * * * in no case * * * shall * * * the work of construction be stayed," after it had deposited with the Clerk of Court the amount of the verdict rendered by the jury from which the appeal was taken, it is clear that the power company was entitled to an injunction to prevent interference with that right by the defendants; an interference that is practically conceded.

There is no question but that the condemnation statute, under which the power company has proceeded, unequivocally provides that, after the Clerk's jury (which we use as a short form of expressing the jury in the "special statutory proceeding") has rendered its verdict and the condemnor has appealed to the Circuit Court, the condemnor, upon payment of the amount of the verdict to the Clerk of Court, may proceed with "the progress of the work of construction"; which can only mean by taking possession of the condemned lands for that purpose.

The defendants attack the constitutionality of this permission, relying upon the propositions: (1) That under the Constitution the condemnor has no right of entry upon the lands of the owner, until he shall have *actually paid to him,* just compensation therefor; (2) that this compensation can only be determined by agreement between the parties, or by the verdict of a lawful jury in a Court of record; that the statute is without constitutional warrant if it be held to grant the permission upon the payment of the amount ascertained by the Clerk's jury, which is not a lawful jury in a Court of record.

PROPOSITION 1

Taking the declaration of Article 1, § 17, alone, ▮ there is support for this proposition: "Private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor."

That Section however must be read in connection with Article 9, §§ 20, 21:

"Section 20. *Right of way.* No right of way shall be appropriated to the use of any corporation until full compensation therefore shall be first made to the owner or secured by a deposit of money, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury of twelve men, in a Court of record, as shall be prescribed by law."

"Section 21. *Provisions not self-executing.* The General Assembly shall enforce the provisions of this Article by appropriate legislation."

The qualification in Section 20: " * * * Until full compensation therefore shall be first made to the owner or *secured by a deposit of money,*" effectually negatives the contention that the compensation must first be actually paid to the owner. It manifestly contemplates that Article 1, § 17, will be complied with by such a provision as the General Assembly is directed to make under Article 9, § 21, regulating the security by deposit of the compensation.

PROPOSITION 2

The first inquiry that naturally must attract attention ▮▮ is whether the special statutory tribunal for the initial ascertainment of the compensation to which the landowner may be entitled may be considered a Court of record and the jury a lawful jury.

The case of *South Carolina Western R. Co. v. Ellen,* 95 S. C., 68, 78 S. E., 963, Ann. Cas., 1915-B, 1042, de-

cided in 1913, is to the effect that the Clerk's jury, *under the statute in force at that time,* was not a jury in a Court of record. In sustaining this conclusion, Mr. Justice Hydrick, delivering the opinion of the Court *en banc,* adverted to these considerations: "It [the jury], is usually composed of men who are ignorant of law and the rules of evidence, and without experience in legal procedure. They have no power to punish for contempt of their proceedings. * * * There is no way by which the jury can be protected from improper influences. * * * There may, and often do, arise nice questions of law as to the elements of just compensation and special damages, and as to the relevancy and competency of evidence. Left to themselves in the decision of such questions, grave injustice might result."

In 1920, however, the condemnation statute was amended, presumably to cure the defect pointed out in the *Ellen case.* The amendment, which now constitutes the last paragraph of Section 4991, was as follows: "It shall further be the duty of said Clerk to act as Master or Referee and preside at and over all such hearings, swearing all the witnesses and jurors in the same manner as is now required in all matters before Masters in Equity or Referees, and the said Clerk, or his deputy, shall conduct all of the said hearings, exercising all the powers, authority and duties that are now conferred by law on Masters in Equity and Referees in so far as the same may be necessary and requisite for a proper and speedy determination of the issues involved."

Prior to this amendment the duties of the Clerk were to give notice to the landowner of the filing of the order and of the day appointed for the hearing; to attend for the purpose of organizing the jury; to summon necessary additional jurors; and presumably to swear the jurors and witnesses.

When these duties were performed the Clerk was practically *functus officio;* from that time on, the reins were

upon the dashboard; he had no authority to rule upon the
admissibility of evidence, to preserve order, to punish for
contempt of his "Court," to instruct the jury upon any ques-
tion of law, to protect them from improper influences, to
remain after the jury retired, or even to receive their ver-
dict.

Unless the amendment of 1920 was intended to supply
the deficiencies pointed out in the *Ellen case,* which pre-
vented that jury from being a lawful jury in a Court of
record, it is difficult to understand the motive of the Gen-
eral Assembly in adopting it.

There is of course no place or officer connected with the
special and temporary tribunal, where or with whom a record
of its proceedings could be deposited; and for that reason
Section 5000 provides: "All proceedings in relation to the
condemnation of lands * * * shall be filed in the
office of the Clerk of the Court of Common Pleas * * *
and shall be there of record." The statute as thus amended
supplies all of the functions necessary to constitute the special
tribunal a Court of record.

"A Court of record has been defined as a Court where the
acts and judicial proceedings are enrolled in parchment for
a perpetual memorial and testimony, and which has power
to fine and imprison for contempt of its authority; a Court
that is bound to keep a record of its proceedings, and that
may fine or imprison; a Court whose proceedings are en-
rolled for a perpetual memorial and testimony, which rolls
are called the record of the Court, and are of such high and
super-eminent authority that their truth is not to be called
in question," etc. 15 C. J., 720.

"Whenever a power is given to examine, hear, and punish,
it is a judicial power, and they in whom it is reposed act as
judges. And wherever there is a jurisdiction erected with
power to fine and imprison, that is a Court of Record, and
what is there done is matter of record." *Groenvelt v. Burwell,*
1 Salk., 200, 91 Reprint, 179.

"The privilege of having these enrolled memorials con-stitutes the great leading distinction in English and Ameri-can law between Courts of record, and Courts not of record, *Hahn v. Kelly,* 34 Cal., 391, 94 Am. Dec., 742." 15 C. J., 720.

The powers of Masters and Referees are plenary, as the presiding officers of a Court, and are set forth in Section 594, Code Civ. Proc.

The authority of the General Assembly to establish such special tribunal as a Court is found in the Constitution, Art. 5, §1: "The General Assembly may also establish County Courts, Municipal Courts and such Courts in any or all of the Counties of this State inferior to Circuit Courts as may be deemed necessary.   *   *   * "

An analysis of the objections to the Clerk's jury pointed out in the *Ellen case* shows that they are completely met by the amendment of 1920; the absence in the old statute of the power to punish for contempt is supplied by conferring upon the Clerk, as the presiding officer of the tribunal, the powers of a Master or Referee which include that power; so with the objection that the jury could not be protected from improper influences, and that there was no authority to pass upon the admissibility of evidence or to give proper legal instructions.

If our conclusion be sound that the special tribunal is a Court of record, and the jury which passes upon the question of the amount of compensation is a lawful body, there can be no doubt but that the condemnor, by paying the amount of the award to the Clerk, may proceed with the appropriation and construction; for the Constitution permits that to be done upon such conditions and in such manner as the General Assembly may dictate by statute.

But assume that, notwithstanding the amendment of 1920, which to our minds unquestionably constituted the special tribunal a Court of record, that tribunal is still not a Court of record, we are of opinion that, under the statute as it

stood prior to that amendment, the tribunal admittedly not being a Court of record, the permission to the condemnor, after having deposited the amount of the verdict with the Clerk, to proceed with the possession of the condemned lands and with the construction of the work, was a valid exercise of power within the purview of the Constitution; and certainly, if that be true, *a fortiori,* the same conclusion would be justifiable under the Act as amended.

Considering then the status under the Act prior to the amendment:

The Constitution certainly meant something when it provided that the condemnor might appropriate the condemned easement when the compensation should be "secured by a deposit of money," as the General Assembly might by statute provide. Manifestly the framers of that instrument contemplated that there might be dissatisfaction on the part of the condemnor with the award and an appeal to the Circuit Court. If the condemnor should be satisfied with the award and the landowner did not appeal, then the payment of the award directly to the landowner matured the right of appropriation. If either party would be dissatisfied and appeal, the immediate right of appropriation would be matured by the deposit of the money with the Clerk. The statute followed closely the intimation thus contained in the Constitution.

The contention that the award by the Clerk's jury is not in conformity with the Constitution, in that it is not compensation ascertained by the verdict of a jury in a Court of record, is disposed of by the rulings of this Court.

In *Atlantic Coast Line R. Co. v. South Bound R. Co.,* 57 S. C., 322, 35 S. E., 556, the Court said, through Chief Justice McIver: "It will thus be seen that the statute makes such provisions as will secure to either party every right guaranteed to him by the constitution, provided he complies with the provisions 'prescribed by law' for such purposes. * * * If a party through his own neglect or omission fails to obtain in a case like this, or indeed in any other case.

a right of trial by jury in open Court, or any other right guaranteed to him by the constitution, by neglecting to pursue the mode prescribed by law for that purpose, it is not the fault of the law, but the fault is his own."

Quoted approvingly by the Court in the *Ellen case,* the Court adding:

"In that case, it was the defendant's own fault that it failed to get a jury trial in open Court, because it did not serve its grounds of appeal."

"But the contention there was that the whole statute was unconstitutional and void, because the jury trial therein provided for was not a jury trial 'in a Court of record,' as required by the Constitution. In response to that contention, the learned Chief Justice proceeded to show that the statute prescribed certain preliminary steps, which, if complied with, will enable the parties to obtain a jury trial 'in a Court of record,' which satisfies the Constitution, as we shall presently show." *South Carolina Western R. Co. v. Ellen,* 95 S. C., 68, 78 S. E., 963, Ann. Cas., 1915-B, 1042, referring to the case of *Atlantic Coast Line R. Co. v. South Bound R. Co.,* 57 S. C., 322, 35 S. E., 553.

"This leads to the consideration of the suggestion that, if the Clerk's jury is not a jury in a Court of record, then its work is a nullity. By no means. It is a convenient and often satisfactory step in the proceedings which, if pursued according to the statute, will ultimately result in a trial by jury in open Court, if either party desires it. Moreover, the verdict is *prima facie* correct, and furnishes a basis upon which the compensation may be secured by a deposit of money, and thereby prevent needless delay in the progress of the work." *South Carolina Western R. Co. v. Ellen,* 95 S. C., 68, 78 S. E., 963, Ann. Cas., 1915-B, 1042.

A clear implication that, if either party to the condemnation neglected or omitted to serve notice of appeal from the verdict of the jury organized under the "special statutory proceeding," as required by the statute in order to

secure a trial by a jury in a Court of record, he would be concluded by that verdict.

The Court might have added, what it had already decided in that case, practically, that, if neither party appealed from the verdict of the Clerk's jury, they would be concluded by it, having waived the right to a trial by jury in a Court of record.

"It may be conceded that a proceeding before such a body is not violative of a constitutional provision requiring a trial by a jury, if an appeal can be taken from the decision of that body to a Court of record, where a trial *de novo* may be had by a constitutional jury of twelve men, under the superintendence of a Judge." *Archer v. Board of Levee Inspectors* (C. C.), 128 F., 125, quoted with approval in *South Carolina Western R. Co. v. Ellen,* 95 S. C., 68, 78 S. E., 963; Ann. Cas., 1915-B, 1042.

In the *Ellen case,* the following from 24 Cyc., 195, is quoted with approval: "An Act is not unconstitutional which provides for an assessment of damages in condemnation proceedings in the first instance by commissioners, viewers, or appraisers, where a right of appeal is secured to a Court where a jury trial may be had; and this rule applies even where a jury trial in such proceedings is expressly guaranteed by the Constitution, but the appeal must be allowed to a Court where the jury of twelve can be had." The Court cites further 6 A. & E. Enc. L. (2d), 981; *Faust v. Bailey,* 5 Rich., 107; *Gregory v. Rhoden,* 24 S. C., 97.

It may be stated, within the judicial notice of the Court, that the foregoing conclusions are in accord with the continued and universal practice in such matters since the adoption of the statutes and constitutional provisions. The decisions of this Court have established rules of property which the public have the right to rely upon and which should not be lightly disregarded.

It should be borne in mind that under the condemnation statutes *the right* to condemn cannot be injected as an issue

in the proceeding. *Railway Co. v. Ridlehuber,* 38 S. C., 308, 17 S. E., 24.

The judgment of this Court is that the orders of his Honor, Judge Henry, be reversed, and that the orders of his Honor, Judge De Vore, be restored in full force pending the final determination of the actions.

MR. JUSTICE BLEASE concurs.

MESSRS. JUSTICES STABLER and CARTER concur in result.

MR. CHIEF JUSTICE WATTS dissents.

MR. JUSTICE CARTER (concurring in result) : In concurring in the conclusion reached in the opinion of Mr. Justice Cothran, I desire to state that I am in full accord with the view expressed as to the amendment of 1920 constituting the Clerk's jury a Court of record, and that since the passage of that amendment the condemnor, by depositing with the Clerk the amount of the verdict, has the legal right to enter into possession and proceed with the construction; but I do not think the condemnor has such legal right independent of the Clerk's jury having been constituted a Court of record.

MR. JUSTICE STABLER concurs.