## OAKLAND CLUB v. SOUTH CAROLINA PUBLIC SERVICE AUTHORITY.
### No. 189.

District Court, E. D. South Carolina.
Nov. 29, 1939.

Judgment Affirmed March 11, 1940.
See 110 F.2d 84.

A. T. Smythe and Barnwell & Whaley, all of Charleston, S. C., for plaintiff.

R. M. Jefferies, of Walterboro, S. C., and Lionel K. Legge and Wm. M. Wilson, both of Charleston, S. C., for defendant.

MYERS, District Judge.

An order was filed herein on the 17th of November, 1939, denying the prayer of the complaint and dismissing the cause.

The complaint sought an injunction against condemnation proceedings instituted by the defendant for the acquisition of certain lands and rights of the plaintiff necessary to be acquired in connection with the construction of a hydro-electric and navigation project in the basin between the Santee and Cooper Rivers.

By Act of the General Assembly of South Carolina, approved April 7, 1934, 38 St. 'at Large, S.C., p. 1507 there was created the South Carolina Public Service Authority, a corporate agency and instrumentality of the State of South Carolina, for the purpose of developing the Cooper River, the Santee. River and the Congaree River and certain of their tributaries, as instrumentalities of intrastate, interstate and foreign commerce and navigation, there being included in such purposes the reclaiming of waste land, the control of floods, the reforestation of water sheds, the improvement of public health conditions, and the development, sale and distribution of hydro-electric power.

South Carolina Public Service Authority, defendant herein, is now engaged in the construction of this project and the acquisition of lands and rights incident thereto and necessary therefor, and it is a matter of common knowledge that the project is being financed by the Government of the United States, through a loan and grant agreement, and by the Works Projects Administration of the United States assisting in the necessary clearing of the lands.

The Act of the General Assembly, approved April 7, 1934, provides among other things that the South Carolina Public Service Authority shall have the right to acquire by condemnation any real or personal property necessary or useful in carrying out any of its purposes or exercising any of its powers, and that such condemnation proceedings shall be instituted and prosecuted in the manner provided for in the Code of Laws of South Carolina relating to condemnation by railroads of rights of way. Code S.C.1932, § 8454 et seq.

By Act of the General Assembly of South Carolina, approved May 31, 1939, known as the State Authorities Eminent Domain Act, 41 St. at Large, S.C. p. 265, all State authorities theretofore created or thereafter to be created, for the purposes and with the powers of the defendant, were given, in addition to rights of eminent domain theretofore given to them, all right of eminent domain of the State of South Carolina for the purposes of the acquisition of property necessary for their purposes, and it was further provided that, unless it should otherwise state in the notice of condemnation, the State Authority should

acquire all such properties in fee simple. The Act further provides a mode of procedure in condemnation, substantially as follows:

The Authority first gives to the land owner written notice of its intention to condemn, specifying the lands, properties or rights to be taken, and designating a person to act as referee on behalf of the Authority, and requiring the land owner to nominate a referee on his behalf within ten (10) days thereafter. The two referees so appointed meet at the Clerk of Court's office and appoint a third referee. Thereafter, the three referees, after ten (10) days' notice, hold a hearing and proceed to determine the amount of compensation and any special damage to be paid to the land owner. Within ten (10) days after the hearing, the referees file their award with the Clerk of the Court of Common Pleas. Upon payment of the compensation so awarded, or deposit thereof with the Clerk of Court, the Authority may enter upon said lands for the purpose of constructing the project. Either the land owner or the Authority may appeal to the Court of Common Pleas from the decision of the board of referees, and upon such appeal the matter is tried de novo before a jury, and the verdict of the jury is final unless set aside for the reasons for which verdicts may be set aside or modified in other cases, or unless the judgment of the Court be reversed for error of law on appeal to the Supreme Court. The amount of the final verdict of the jury on appeal shall be paid to the Clerk of Court by the Authority, and in the event that the Authority shall have previously deposited with the Clerk of Court the amount of the award of the referees, then the Authority may pay to the Clerk of Court the difference between the amount previously deposited and the total amount of the verdict of the jury and the costs on appeal, and the said funds so paid to the Clerk of Court shall be disbursed to the land owner or land owners in accordance with the final order of the Court. If the jury verdict is smaller than the amount previously paid to the Clerk of Court, the Clerk shall remit to the Authority the difference between the amount previously deposited and the amount of the verdict. Upon the final determination of the condemnation proceedings, the Clerk of Court shall execute and deliver to the Authority a deed conveying title to the properties described in the notice, and upon delivery of such deed the Authority shall be vested with title to the said properties.

Incident to the construction of the project in question, the defendant, pursuant to the provisions of the Federal Water Power Act, 16 U.S.C.A. § 791 et seq. (now known as Federal Power Act), has acquired, with the approval of the Federal Power Commission, a license, previously issued by said Federal Power Commission to Columbia Railway & Navigation Company, authorizing the construction, maintenance and operation of the project (S.C.Project No. 199).

Section 21 of the Federal Power Act, 16 U.S.C.A. § 814, reads as follows: "When any licensee can not acquire by contract or pledges an unimproved dam site or the right to use or damage the lands or property of others necessary to the construction, maintenance, or operation of any dam, reservoir, diversion structure, or the works appurtenant or accessory thereto, in conjunction with an improvement which in the judgment of the commission is desirable and justified in the public interest for the purpose of improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such land or other property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: Provided, That United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000."

On or about October 3, 1939, the defendant served upon the plaintiff notice, under the provisions of the Act of the General Assembly of South Carolina, approved May 31, 1939, and the provisions of the Federal Power Act above referred to, and all other applicable laws, that it intended to condemn and take in fee simple certain lands of the plaintiff necessary for the public purpose of the defendant, naming a referee in its behalf, and requiring the plaintiff to appoint a referee in its own behalf and to file such appointment with the Clerk of the United States District Court

for the Eastern District of South Carolina, within ten (10) days thereafter.

The plaintiff thereupon brought this suit to enjoin the said condemnation proceedings upon the grounds hereinafter mentioned. Reserving its rights under this suit, the plaintiff thereafter nominated its referee, and the two referees so appointed by the plaintiff and the defendant respectively, appointed a third. Subsequently, a second notice of condemnation was served upon the plaintiff, specifying certain other lands and hunting rights sought to be condemned; and by agreement between the parties, but with full reservation of the plaintiff's rights, the condemnation proceedings under both notices were consolidated and conducted as one.

The grounds upon which the plaintiff seeks to enjoin these proceedings are, briefly stated, as follows:

1. That the Act of the General Assembly of South Carolina approved May 31, 1939, is in violation of the Fifth and Fourteenth Amendments of the Federal Constitution, U.S.C.A., in that it permits the taking of the plaintiff's property for public use without due process of law and without just compensation, because:

It contains no provision for enforcing the payment to the plaintiff of any sum of money in excess of the amount of the award of the referees, should the verdict of the jury exceed such amount; contains no provision authorizing the plaintiff to enter judgment against the defendant upon such verdict, nor any method by which plaintiff may enforce payment of the same, save the language in the Act that "the final verdict of the jury on appeal shall be paid to the Clerk of Court" (section 8) by the defendant; contains no provision for securing such payment by lien or deposit (other than the deposit required to be made upon the award of the referees); does not make the State of South Carolina or any political subdivision thereof responsible for the liabilities or obligations of the defendant; and does not make reasonable, certain and adequate provision for compensating the plaintiff for the taking of its property before its occupancy is disturbed.

2. That under the provisions of the Federal Power Act above referred to, the defendant is authorized to condemn the fee only of "an unimproved dam site", and is limited in its powers as to other lands necessary to the construction, maintenance or operation of any dam, reservoir, diversion structure, or the works appurtenant or accessory thereto, to the condemnation of the right to use or damage the same, which is an easement, and not the fee; that a part of plaintiff's land which is sought to be condemned by the defendant as described in the condemnation notice is to constitute "a portion of the site of the dams," but the remainder of said lands will be within the area of the reservoirs or the strip of one hundred (100) feet above the high water mark thereof, and that as to them the defendant cannot acquire a fee simple title, and therefore has no right to bring the condemnation proceedings which it has brought and under which it is attempting to acquire the fee in such lands.

The plaintiff alleges that it is without adequate remedy at law and that it will be irreparably damaged unless the condemnation proceedings in question are enjoined, for the reason that should an appeal be taken to this Court from the award of the referees, the Court, upon that appeal, will be limited in its inquiry and judicial determination to the question of the amount of compensation to be paid to the plaintiff for its property so taken, and that it will not be appropriate for the Court, in those proceedings, to consider the questions now presented.

The answer of the defendant alleges in substance:

1. That it is an agency and instrumentality of the State of South Carolina, exercising necessary and useful functions of government, and, pursuant to the purposes of its creation, is engaged in the construction of a $40,000,000 navigation and hydroelectric project in the Santee-Cooper basin, in aid of commerce and navigation and for the benefit of the entire State of South Carolina.

2. That the Act of the General Assembly of South Carolina approved May 31, 1939, under which it proposes to condemn and take plaintiff's land, is not unconstitutional.

3. That said Act simply meets the constitutional requirement relating to due process of law and the securing of payment of just compensation for land so taken, because:

(a) The condemnee is not entitled, as a matter of constitutional right, to have the amount of compensation determined in the first instance by a jury;

(b) The provision in the Act for a trial de novo before a jury on appeal from the award of the referee is full compliance with the constitutional requirements;

(c) The constitutional requirements relating to the securing of payment to the condemnee are fully met by the provisions of the Act, whereby:

(1) Before entry upon the land, the condemnor is required to deposit with the Clerk of Court the full amount of compensation to which the condemnee is entitled as determined by the board of referees; and

(2) In the event of an appeal from the award of the board of referees and the trial of the issue of compensation before a jury and the rendition by such jury of a verdict for an amount in excess of the award of the referees, the condemnor is required to pay such excess amount to the Clerk of Court or to the condemnee, and the latter is entitled to enter judgment and issue execution thereon against the properties of the condemnor; and

(3) Title does not pass from the condemnee to the condemnor until actual payment to the condemnee of the full amount of compensation to which the condemnee is entitled under the verdict of the jury; and

(4) In addition to the provisions of the Act, the condemnee has, under the general law of South Carolina, an equitable lien upon the lands condemned and taken, for the full amount of compensation to which the condemnee is entitled; and

(5) In the present case, the plaintiff is not in danger of loss or injury, because the defendant is financially able to respond for any reasonably possible excess of the amount of the verdict for compensation over the award of the referees, and because the defendant is willing, in the event that the court deems the plaintiff insecure, to put up such further security as the court may require.

4. That the provisions of the Federal Water Power Act do not preclude the defendant from condemning and taking the plaintiff's land in fee as is being done in the condemnation proceedings referred to, because:

(1) The Federal Water Power Act does not purport to abridge the substantive right of the defendant to condemn and take under the State statutes the quantum of title there provided.

(2) The Federal Water Power Act expressly or by necessary implication authorizes the defendant to condemn such land in fee.

At the hearing of the cause, the plaintiff, having given due notice of its intention so to do, moved to strike certain portions of the answer, to wit:

1. Paragraph 6, in which the size and cost of the project are detailed, and in which it is alleged that the project is costing approximately $40,000,000, being financed under a loan and grant agreement between the defendant and the Public Works Administration of the United States, providing for a grant of forty-five (45%) per cent of the principal cost, and a loan, through purchase of bonds, of the remaining fifty-five (55%) per cent, and with the aid of a clearing project created by the Works Projects Administration of the United States at an estimated cost of $6,-000,000.

2. The portion of the Fourth Defense which alleges that the portion of the Santee dam which will be erected on the plaintiff's land will be erected at a cost in excess of $3,500,000, and the portion of the diversion canal to be built on said lands will be built at a cost in excess of $54,500; that the defendant has already acquired and now owns free of encumbrances, more than 14,-000 acres of land which have been acquired at a cost in excess of $103,000; that the plaintiff is not therefore entitled to invoke the equitable remedy of injunction on the theory that it will be irreparably damaged by reason of the insecurity of its right to recover any possible excess of the amount of the jury verdict over the amount of the referees' award, because, in addition to retaining title to its properties until payment to it of the full amount of compensation as determined by said verdict, the plaintiff will, by reason of said facts, be amply secured as to any reasonably possible excess of the amount of said verdict over the amount of said award, by reason of the defendant's financial responsibility, by reason of the greatly increased security of the equitable lien which the plaintiff has, under the general law of South Carolina, upon the lands so condemned and taken, and by reason of the fact that ample time will be afforded before the flooding of its lands, which will not occur for at least one and one-half years, for the enforcement and collection of said lien or of a judgment against the defendant; and that the defend-

ant is willing and offers, in the event that the Court should determine that the security afforded the plaintiff under the said Act of the General Assembly is insufficient, to furnish such further security as the Court may deem proper.

3. Subdivision 5 of the Fifth Defense, wherein it is alleged that the value of the plaintiff's lands so proposed to be taken, and the consequent security of the plaintiff's lien, will not be diminished, but will be greatly enhanced, by the construction of the defendant's project thereon.

■ So far as concerns the portion of the answer affected by the motion which purports to detail the size and scope of the defendant's project, it is my opinion that such allegations are entirely proper, particularly in view of the fact that the complaint itself contains allegations setting out in part the details of the project. In regard to the other allegations to which the motion was directed, relating to the financial responsibility of the defendant, the offer to give additional security if the Court should so order, and the allegations tending to show that in the case at bar the plaintiff is in fact amply secured as to compensation, it was my opinion that these allegations were not improper and therefore should not be stricken, although, in the view which I take of the statute under attack, they are of no importance. The motion to strike was therefore refused.

The plaintiff then offers the testimony of Mr. Gadsden E. Shand, a well-known engineer of this State, who testified that his understanding of the meaning of the phrase "dam site", from the standpoint of a hydro-electric engineer, does not include the reservoir or pond, but includes the land upon which the dam is actually constructed, and such other lands thereabout as may be necessary for the facilities incident to the operation of the dam. Under cross-examination he admitted that one of the accepted meanings of the word "dam" in Webster's Unabridged Dictionary is the body of water confined or held by the dam, and that in every-day language the word "dam" is used to include the whole project; as, for example, in the usual reference to "Boulder Dam" and "Coulee Dam".

Plaintiff also offered the testimony of Mr. John D. Gadsden, the general manager of the plaintiff, for the purpose of proving the damage which would be done to the lands by the defendant's entry upon them after the deposit of the referees' award; but as

the statute was in my opinion (and I had so stated), clearly a valid one and not in contravention of the constitutional requirements, plaintiff's counsel very properly suggested that it might not be worthwhile to put Mr. Gadsden on the stand; and he therefore did not testify.

■ The plaintiff's contention that the South Carolina statute is unconstitutional is grounded on the theory that the deposit by the defendant with the Clerk of Court, before entry upon the land, of the amount of compensation as determined by the award of the referees, is not adequate provision for the plaintiff's compensation, because if the plaintiff should appeal from the referees' award, and if on such appeal the jury should award a larger amount, the plaintiff would have no assurance of payment of such excess.

There is, in the first place, no legal presumption that the verdict of the jury on appeal will exceed the amount of the referees' award. The Act itself negatives such presumption by provision for return to condemnor of excess award, in the event that the jury's finding be for a less amount. Courts will not declare a statute unconstitutional on such a conjectural possibility.

No case has been cited to me in support of the proposition that the deposit or payment, before entry, of the full amount of compensation as determined by the award of the referees or commissioners fails to meet the constitutional requirement. The case of Cherokee Nation v. Southern Kan. R. Co., 135 U.S. 641, 10 S.Ct. 965, 34 L.Ed. 295, does not support that theory. It is true that in that case the statute required a deposit of double the amount of compensation as found by the commissioners, but there is no suggestion in that decision that a statute providing for the deposit of the actual amount so determined would be invalid. And if we are to view the subject from the standpoint of conjecture, the possibility that the amount of the jury's verdict on appeal will exceed double the amount of the initial award is different only in degree, and not in principle, from the possibility that such verdict will exceed the amount of the initial award.

In the case of Lexington Water Power Company v. Wingard, 150 S.C. 418, 148 S. E. 366, 369, the Supreme Court of South Carolina had under consideration the constitutionality of a condemnation statute which, so far as concerns the features here under discussion, was identical with the Act

of May 31, 1939. The statute there provided that the condemnor should deposit with the Clerk of Court the amount of compensation as determined by the Clerk's jury, and upon such deposit should have the right to enter the lands and proceed with its work. Appeal was permitted from the award of the Clerk's jury to a trial de novo before a jury in the Court of Common Pleas. The statute was attacked as in violation of the provisions of the Constitution of South Carolina requiring that private property should not be taken for public use without just compensation being first made therefor. The Court said: "The permission to the condemnor, after having deposited the amount of the verdict [i. e., the award by the Clerk's jury] with the Clerk, to proceed with the possession of the condemned lands and with the construction of the work, was a valid exercise of power within the purview of the Constitution."

It is suggested by the defendant that under the general law of South Carolina the condemnee has an equitable lien upon the property condemned and taken, as security for the payment of compensation; that the security of this lien will be enhanced by the valuable improvements to be placed upon the lands; that under the Act of May 31, 1939, the plaintiff has the right to enter judgment upon the verdict of the jury on appeal, and to issue execution thereon against the properties of the defendant; that by the express terms of the Act, title does not pass to the defendant until payment of the amount of compensation as finally determined; and that by reason of the alleged financial responsibility of the defendant, the plaintiff's claim of insecurity is unfounded in fact. The plaintiff does have the security of the lien referred to, and has the right, under the Act, to enter judgment.

I do not deem it necessary to decide the matter upon those considerations, as I am satisfied that the statute itself makes reasonable, certain and adequate provision for the plaintiff's compensation, and that it amply meets the constitutional requirements.

The other ground upon which the plaintiff seeks to enjoin the condemnation proceedings is that under Section 21 of the Federal Power Act the defendant has no right to condemn in fee any lands of the plaintiff other than those upon which dams (i. e., embankments) are to be erected, and that as to all other lands to be condemned and taken the defendant is limited to an easement.

In the first place, I do not agree with the suggestion that in the event of an appeal to this Court from the award of the referees this Court will have no control over the matter except so far as concerns the amount of compensation to be paid to the plaintiff. It is quite true that the right of the condemnor to condemn is not before the Court on such an appeal; but as to other matters necessarily involved, such as the quantum of the title to be taken, or the propriety of the Clerk's deed at the conclusion of the proceeding, it seems to me that in reason and principle they are under the supervision and control of the Court; and I know of no authority to the contrary. Can it be doubted that in such condemnation proceeding this Court would exercise its jurisdiction in control of the use of the lands in the progress of the project in the event of the failure of the condemnor to meet with reasonable promptness the requirement for the payment into Court of any excess of jury verdict over referees' award? I think not.

In any event, the plaintiff's case is not one in which the Court should issue any injunction against the entire condemnation proceedings, and that, as stated by counsel for plaintiff, in open court, is the sole purpose of the present suit.

Apart from that, it is my opinion that the plaintiff's contention is without merit. Were the defendant basing its substantive rights upon the Federal Power Act alone, I could not agree with the narrow construction which the plaintiff places upon the words "unimproved dam site" as there used. The statute must be interpreted in the light of the generally accepted meaning of words, and though in the technical language of hydro-electric engineering the word "dam" or "dam site" may be considered as meaning only the embankment or obstruction whereby water is impounded, its meaning in everyday language is broad enough to include the area covered by the impounded water. In Webster's International Dictionary (Unabridged, 1939), the word "dam" is defined as follows:

"1. A barrier to prevent the flow of water; especially, a bank of earth, or wall of any kind, as of masonry or wood, built across a watercourse, to confine and keep back flowing water.

"2. A body of water confined or held by a dam; a mill-pond.

"3. A device to check the course of anything moving."

And in 17 Corpus Juris, at page 697, we find: "The word (dam) is used in two different senses. It properly means the work or structure raised to obstruct the flow of the water in a river, but by well settled usage, it is often applied to designate the pond of water created by this obstruction."

The Federal Power Act should be, in my opinion, broadly construed with relation to the evident legislative purpose. Hence it must be assumed that the rights which the Act authorizes the licensee to acquire should be free from restriction or interference of any nature; hence the right to condemn the fee in all lands necessary to the project, for impounding water, flowage, or otherwise, as well as the fee in the embankment. The Power Act could in no sense be held restrictive of the condemnation rights granted by the South Carolina statute. The defendant is proceeding in the condemnation not only by virtue of the Federal Power Act, but by virtue of the Act of the General Assembly of South Carolina approved May 31, 1939, which specifically provides that the condemnor shall take the lands in fee unless it be stated in the notice of condemnation that a lesser estate is desired. Section 21 of the Federal Power Act, which is the only reference in the whole Act to the exercise of the right of eminent domain, does not in itself purport to set forth a comprehensive, self-contained and exclusive law of eminent domain, nor is it in conflict with the South Carolina statute.

And, while the rule is that in the absence of a statute fixing the quantum of title the condemnor takes only such title as the public use requires, it is well settled that where a statute expressly or by necessary implication declares that the fee shall be taken, the condemnor will acquire the fee.

Looking at the two statutes together, I construe Section 21 of the Federal Power Act not as an exclusive law of eminent domain, not as abridging substantive rights granted to the defendant under the State law, but as complementary to the State law, and as enabling the holder of a Federal Power license to exercise in the Federal courts, as the defendant is doing, the substantive rights of eminent domain granted to it under the State law.