19656. WILLIAMS *v.* CITY OF LAGRANGE *et al.*

MOBLEY, Justice. Robert T. Williams brought an equitable petition against the City of LaGrange, its mayor and council, hereinafter referred to as the defendant, alleging that the defendant was proceeding to condemn the petitioner's land, and praying that the condemnation proceedings be temporarily and permanently enjoined. On January 17, 1957, the petition was ordered filed and a temporary restraining order issued requiring the defendant to show cause on February 8, 1857, why the prayers of the petition should not be granted. The petition alleged the following: The defendant served notice of condemnation upon the petitioner on December 18, 1956. The parties appointed their assessors, who met and, after hearing evidence, made an award on January 14, 1957. The award was tendered to the petitioner, refused by him, and deposited with the clerk of the superior court. The petitioner's appeal from the award is now pending. The defendant did not attempt to acquire the petitioner's land by contract prior to the condemnation proceedings. There had been no finding that said land is necessary for street purposes, and said property is not necessary for street or other public purposes. The condemnation is proceeding illegally for the private use of a named corporation. On February 8, the day set for interlocutory hearing, the petitioner offered an amendment, which was allowed subject to demurrer. The amendment alleged: The defendant proposed

to build a 40-foot street upon the petitioner's land and that of adjoining landowners. Upon adjoining land the defendant was condemning only a 60-foot right-of-way, while a 75-foot strip was being taken on the petitioner's land. A 60-foot strip was all that is needed for the street, and the defendant is attempting to take a 15-foot strip more than is necessary of the petitioner's land. In grading and clearing the street, the defendant has committed acts of waste in damaging trees and tearing down fences, and is threatening to sell the timber cut from the right-of-way and to remove soil and rocks therefrom and use the same elsewhere in the city. There was an additional prayer for injunction to prevent the above acts of trespass. Evidence was introduced at the hearing, after which the trial court orally announced that he sustained the defendant's oral motion to dismiss in the nature of a general demurrer. Thereafter, on February 11, 1957, a written order was entered, in which no reference was made to the demurrers in the case or the oral announcement relating thereto, and the only judgment entered was one sustaining the defendant's plea of estoppel and dismissing the plaintiff's petition. In his bill of exceptions, the petitioner excepts to the oral announcement of the trial judge with reference to the defendant's oral motion to dismiss the petition, and to the judgment sustaining the plea of estoppel and dismissing the petition. *Held:*

1. "It does not appear that any judgment in writing was taken, overruling the demurrer to the petition. What the judge orally declares is no judgment until it has been put in writing and entered as such. *Freeman* v. *Brown,* 115 *Ga.* 23, 27 (41 S. E. 385); *Alexander* v. *Chipstead,* 152 *Ga.* 851, 861 (111 S. E. 552); *Conley* v. *Pope,* 161 *Ga.* 462 (3) (131 S. E. 168). As no judgment in writing overruling the demurrer to the petition was entered, the assignment of error thereon in the cross-bill of exceptions presents no question for decision by this court." *McRae* v. *Smith,* 164 *Ga.* 23 (7) (137 S. E. 390). Applying the above to the instant case, the exception to the announcement of the trial court that the defendant's demurrer to the petition was sustained, which oral declaration was not reduced to writing and entered as the judgment of the court, presents no question for decision by this court.

2. "The underlying and fundamental principle upon which the right to take the property of any private citizen against his

will by the delegated sovereign power of the State of eminent domain is that it is necessary to do so for a public purpose; and the only way in which the question of public necessity can be raised in a condemnation proceeding under the Code, Chapter 36-3, is by an equitable petition for injunction. *Harrold v. Central of Georgia Railway Co.*, 144 *Ga.* 199 (86 S. E. 552); *Piedmont Cotton Mills* v. *Georgia Railway and Electric Co.*, 131 *Ga.* 129, 136 (62 S. E. 52); *Hogg* v. *City of LaGrange*, 202 *Ga.* 767 (44 S. E. 2d 760); *Western and Atlantic Railroad Co.* v. *Western Union Telegraph Co.*, 138 *Ga.* 420 (75 S. E. 471); *Savannah River Terminals Co.* v. *Southern Railway Co.*, 148 *Ga.* 180 (3), 186 (96 S. E. 257)." Dissenting opinion in *Georgia Power Co.* v. *Fountain*, 207 *Ga.* 361, 372 (61 S. E. 2d 454). However important may be the march of progress, including the building of roads, streets, and other public improvements, the Constitution of Georgia provides that "Protection to person and property is the paramount duty of government, and shall be impartial and complete." Code (Ann.) § 2-102. The right of the humblest individual in the enjoyment of his property must be protected. The right to take private property from the owner for public use often works extreme hardship and savors of oppression. Nothing but a public necessity can justify it, and then only in strict conformity with the law.

The General Assembly of this State, in providing for the exercise of the power of eminent domain, has afforded to the property owner whose property is to be condemned certain rights in fixing the value of his property, such as the right to appoint an assessor, to offer evidence, and to appeal from the award of the assessors to a jury. Where proceedings are instituted under Code § 36-301 et seq. for the purpose of acquiring property for public purposes, the sole question which may be passed upon by the appointed assessors, or by a jury on appeal, is the amount of compensation to be paid to one whose property is being taken by the condemning authorities. The legislature has not expressly provided any method whereby the property owner can contest the question of public necessity or the right of condemnation. Consequently, the property owner is left without a legal remedy and must resort to an independent action in a court of equity for relief. For a property owner to exercise the right conferred upon him by

statute to have a hand in fixing the value of his property in the only manner provided by law for establishing such value, is not a waiver by him of his right to proceed in equity to test the right of the condemnor to condemn. The two remedies are not inconsistent, and participation by the property owner in fixing value would not constitute an election of remedies. An election of remedies will be compelled only where two suits or legal proceedings have substantially the same aim and scope, and the relief sought in each case is substantially the same. 18 Am. Jur. 150, § 30. The aim and scope of a condemnation proceeding is solely to determine the question of value; by a petition in equity, as in the instant case, the questions of necessity, extent of the taking, right of the condemnor to condemn, and perhaps others may be determined.

This court had never held, prior to *Georgia Power Co.* v. *Fountain,* 207 *Ga.* 361, supra (and then with only three Justices agreeing, the fourth Justice concurring for different reasons), that naming an assessor, introducing evidence before the assessors, refusing to accept the award, and appealing therefrom, would estop a property owner from questioning in equity the necessity of the taking or the validity of the condemnation proceedings. It has held in several instances (*Central of Ga. Ry. Co.* v. *Bibb Brick Co.,* 149 *Ga.* 38, 99 S. E. 126; *State Highway Dept.* v. *H. G. Hastings Co.,* 187 *Ga.* 204, 207, 199 S. E. 793, 133 A. L. R. 1), that, if a property owner accepts the award made by the assessors, he is estopped. This is unquestionably correct, for obviously one can not voluntarily accept the money awarded for his property and still contest the right to condemn. The three Justices in ruling that the petitioners in the *Fountain* case were estopped followed those cases by holding that payment of the award into court upon refusal of the owner to accept was the legal equivalent of payment, citing in support thereof Code § 36-602; *Oliver* v. *Union Point & White Plains R. Co.,* 83 *Ga.* 257 (9 S. E. 1086) ; *Pilgreen* v. *City of Atlanta,* 204 *Ga.* 710 (51 S. E. 2d 655). The Code section cited provides that an appeal with not delay entering upon the property and beginning of the work where payment is made to the owner or, upon his refusal, to the clerk of the superior court. In construing this section, this court in *Oliver* v. *Union Point &c. R. Co.,* supra, headnote 4, said: "Tender of the sum assessed and awarded, duly made and continued, but refused,

is the equivalent of actual payment of the award, in its effects on the right of the corporation to enter upon the land and prosecute the work of construction." Clearly, the import of that is that payment into court is the equivalent of payment to the owner only insofar as the right to enter upon the property and prosecute the work is concerned. It is not the equivalent of acceptance of the award by the owner nor of payment to him insofar as it affects his right to pursue his remedy in equity. Even if equivalent to payment, it is not the equivalent of making a choice, as would be acceptance of the money by the owner.

The inequity of holding that a property owner who appoints an assessor and participates in the condemnation proceeding, but who refuses to take the award of the assessors, would be estopped to proceed in equity to test the validity of the condemnation proceedings is illustrated by the facts in the *Fountain* case, supra: Upon being served with the statutory notice, the Fountains et al. filed an equitable petition seeking to enjoin the condemnation on certain grounds. At the interlocutory hearing, a temporary injunction was denied, from which no appeal was taken. Following this, the parties selected assessors who made an award from which the condemnees appealed. Then the equitable petition came on for trial. The condemnor filed a plea of estoppel alleging, among other facts, that, following the denial of the temporary injunction and payment of the award of the assessors into court, it had taken possession of the condemnees' land, constructed improvements thereon, was already using the land for the purpose intended, and that the condemnees, having participated in the condemnation proceedings, were estopped to contest them in equity. This plea was disallowed by the trial court. A jury found that the condemnor should be permanently enjoined as prayed. Three Justices of this court held that the plea of estoppel was good, a fourth, that the petitioners were guilty of laches in the prosecution of their equitable petition, and the case was reversed with three Justices dissenting.

In that case, the petitioners acted promptly to enjoin the taking of their property in the only manner authorized by the law of this State. Upon the denial of a temporary injunction, they did not permit the law of the case to become fixed adversely to their contentions by failing to except to this judgment, be-

cause the trial court in passing upon the evidence presented was acting in the exercise of his discretion and did not base his decision upon a strict question of law. Now, the condemnees find themselves in the position of being forced to select an assessor, or else the ordinary will select one for them. There is no other course open to them. The trial of the equitable petition may be weeks away. The condemnation proceedings move inexorably onward. They are allowed only until the day fixed in the notice to appoint their assessor, and this is only fifteen days. *Sheppard* v. *City of Edison,* 161 *Ga.* 907 (8) (132 S. E. 218). If they now select an assessor of their own choosing, a hearing is had to determine value, an award is made and tendered to them or into court, and the appropriation of their property is complete, if they are then estopped to proceed with their action for equitable relief. No determination of the necessity of the taking, the extent, or the right to condemn has ever been made. They might as well dismiss their equitable petition, because it can not withstand the defendant's plea of estoppel. Such is not the intent of the law that requires a plaintiff to elect between inconsistent remedies.

In the instant case, the property owner acted promptly after the award of the assessors was made by filing his petition in equity, alleging that the condemnor was proceeding illegally and had no right to condemn, and sought to enjoin the entering upon or taking possession of his property and proceeding with the construction of the street. Consequently, he was not guilty of laches, nor was he for any other reason, as set out above, estopped to contest the validity of the condemnation proceedings.

3. Since the only question presented for decision by this court is whether the trial court erred in sustaining the defendant's plea of estoppel, there is no merit in the motion to dismiss the bill of exceptions on the ground that the questions raised by the petition and demurrer have become moot by the clearing, grading, and constructing of the street right-of-way. Whether or not the question of injunction is moot because of the alleged completion of the acts sought to be enjoined, this would not affect a determination of the question raised by the exception to sustaining the plea of estoppel in the instant case. But see, in this connection, *Hagans* v. *Excelsior Electric Membership Corp.,* 207 *Ga.* 53 (2) (60 S. E. 2d 162).

4. The trial court erred in sustaining the defendant's plea of estoppel for the reasons stated above, and said judgment is hereby reversed.

*Judgment reversed. All the Justices concur, except Wyatt, P. J., and Candler, J., who dissent.*

ARGUED APRIL 8, 1957—DECIDED MAY 14, 1957.

*Reuben A. Sumner, Robert E. Williams,* for plaintiff in error. *Richter & Birdsong, Horace E. Richter,* contra.