MARIO MERCADO E HIJOS, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, CONDEMNATION PART; PEDRO SANTOS BORGES, JUDGE, Respondent.

No. 2867. Decided May 4, 1962.

*Charles R. Cuprill* and *Pedro M. Porrata* for petitioner. *J. B. Fernández Badillo, Solicitor General,* and *Rodolfo Cruz Contreras, Assistant Solicitor General,* for the Commonwealth of Puerto Rico.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

At the request of the Puerto Rican Development Company, a condemnation proceeding was instituted on September 9, 1959 against the corporation Mario Mercado e Hijos and others for the purpose of acquiring a parcel of 70.8397 cuerdas of land located in the ward of Canas, Ponce, to be used for industrial purposes. Two days later a decision was issued, ordering the material delivery of the parcel and vesting the Commonwealth of Puerto Rico with title in fee simple over said property.

Respondent requested to set aside the order for actual delivery of the condemned parcel, setting forth in synthesis, the following grounds: 1—the condemnation does not constitute a public use; 2—the exercise of the power to condemn and to deprive an established industry of its source of raw material and then to deliver those lands to private entities for the operation of industrial establishments is unlawful and unconstitutional and, 3—the determination made in the selection of the lands is arbitrary and prejudicial to the interests of the owner, as well as of the community in general. After a hearing during which documentary and oral evidence were introduced, the court by an order of March 23, 1960 dismissed this motion. An appeal was filed which we dismissed on June 6 of that same year. *Commonwealth of Puerto Rico* v. *Mario Mercado e Hijos,* appeal No. 12800. The answer reproduced as special defense that defense relative to the selection of the condemned lands, and in an amended answer it was specifically alleged that the condem-

nation was arbitrary, capricious, unreasonable and irrational, therefore depriving it of its property without due process of law.

Respondent served the State a sheet of interrogatories which required the following information:

"1. State the name of the expert or experts employed in the appraisal of the lands involved in this case.

"2. State the name of the persons which took part in the selection of the lands in this case.

"3. State the procedure employed in this case for the selection of the condemned lands and on what basis was their public usefulness determined.

"4. State whether plaintiff was not offered, prior to the condemnation, other lands in the same farm, not planted with cane.

"5. What factors were employed to reach the conclusion that the condemned lands were better?

"6. State how plaintiff arrived at the conclusion that the condemned land is worth $125,455.90 and what elements or factors were utilized.

"7. Furnish copy of the appraisers' report in this case.

"8. Furnish copy of sales or transactions employed to reach that conclusion and state which do you intend to use in this case.

"9. State whether plaintiff, took into consideration the impact on Central Rufina and on the sugar industry in general upon condemning 70 cuerdas of land planted with cane.

"10. State whether upon making the selection of the lands, the Department of Agriculture of P. R. was consulted, and if so, what was its answer.

"11. How does plaintiff explain that while on the one hand the Legislature of Puerto Rico spends millions of dollars as incentive for the planting of canes, on the other hand plaintiff strips a farmer of 70 cuerdas of cane, yielding approximately 3,000 tons of cane?

"12. Furnish a list of industrial propositions which plaintiff intends to carry out in the condemned land and the type of activity to which they would be devoted, indicating the number of workers to be employed, annual payroll, and materials to be used.

"13. State whether soil tests were made and in which places. Furnish copy of the report.

"14. Furnish a copy of the report of the Planning Board approving the acquisition of the lands.

"15. Furnish a copy of the requirement referred to in paragraph No. 1 of the complaint.

"16. State whether the condemned lands are adjacent and contiguous to a first-rate highway.

"17. State whether there are facilities of electricity, power, and telephone in that locality.

"18. State the distance between the condemned lands and San Antonio Urbanization, Grillasca Urbanization, from Parque Atlético Montaner, Dr. Pila High School, the Vocational School, Hostos Avenue.

"19. State whether or not the condemned land is flat."

Plaintiff furnished the information as to the name of the expert appraiser employed for the appraisal of the land (interrogatory No. 1), the factors utilized to verify the appraisal (interrogatory No. 6), the report of similar sales considered for the appraisal (interrogatory No. 8) and the topography of the land (interrogatory No. 19). It objected to the rest on the following grounds: as to interrogatories Nos. 2 to 5, because an identical issue—the challenge of the selection of the lands—has already been decided in two previous occasions in a way contrary to the pretensions of the defendant corporation; as to interrogatory No. 7, which required a copy of the report of appraisal, because it was inappropriate; as to interrogatories Nos. 9 to 12, because they concerned irrelevant matter; and as to the rest, because they concern matter which is easily available to the proponent and within its reach.[1] These objections were sustained, and in order to review the action of the Condemnation Court we granted certiorari.

---

[1] In the brief filed before this Court, the intervener admits that the trial court committed error in sustaining the objections to interrogatories 16, 17 and 18, because although they dealt with information within the knowledge of the proponent, the object pursued, to obtain admissions, is one of the acknowledged ends in this procedure of discovery of evidence. We concur in this criterion.

 1. In *Martínez* v. *Superior Court, ante,* p. 1, we adopted the rule of permitting—under certain conditions—the discovery of expert evidence in cases of condemnation. We specifically authorized that the inspection or copy of the report of the expert appraiser be permitted when, as in the case at bar, the taking of his deposition was not authorized. Respecting interrogatory No. 7 the trial court erred in sustaining that the delivery to defendant of a copy of the report of the appraiser Feliú was inappropriate. However, in the order it shall render, it may impose whatever conditions might safeguard the opportunities which the State should have of adequately preparing itself for the hearing of the case, specially if defendant intends to use later the testimony of experts to challenge the aforesaid report of appraisal.

 2. Interrogatories Nos. 2, 3, 4, 5, 9, 10, 11, and 12 are directed towards obtaining information in order to support the allegation that the selection of the land was capricious and arbitrary. Even when this same issue was decided adversely to the defendant corporation—after introducing evidence to that effect—we prefer to discuss it so as to clearly establish the rule which should be observed for the purpose of determining the appropriateness of this allegation and its limitations.

 In general terms it has been held that since the power to condemn is an attribute inherent to the sovereignty of the State, the only limitations that may be acknowledged to its exercise are that the property be devoted to public use or purpose and that defendant be paid a just compensation therefor. Any doubt that might lurk as a consequence of the language used in the opinion of *United States* v. *Carmack,* 329 U.S. 230, 247 (1946) seems to vanish after *Berman* v. *Parker,* 348 U.S. 26, 36 (1954) in which it was recognized that an urban development agency had power to acquire not only the dilapidated buildings, but also the entire area in which they are located for the purposes of a project to eliminate slums.

It was stated that "It is not for the courts . . . to sort and choose among the various parcels selected for condemnation," and it was added that "The rights of these property owners are satisfied when they receive that just compensation which the Fifth Amendment exacts as the price of the taking." [2] In fact, it has been held that once it has been established that the use for which the condemned property is destined constitutes a public purpose, it is not for the courts to review determinations on the nature or scope of the right to be acquired, the amount of land to be condemned, the necessity or the adequacy of the place in particular, because this power resides in the legislature and may either be exercised by the legislature or delegated by it to public officers or agencies. *Rindge Co.* v. *Los Angeles County*, 262 U.S. 700, 709 (1923) ; *Joslin Mfg. Co.* v. *City of Providence*, 262 U.S. 668 (1923) ; *Bragg* v. *Weaver*, 251 U.S. 57, 58 (1919) ; *Shoemaker* v. *United States*, 147 U.S. 282, 298 (1893) ; *Boom Co.* v. *Patterson*, 98 U.S. 400, 406 (1878) ; *United States* v. *South Dakota*, 212 F.2d 14 (C.A. 8, 1954) ; *Simmonds* v. *United States*, 199 F.2d 305, 306–07 (C.A. 9, 1952) ; *United States* v. *State of New York*, 160 F.2d 479, 480 (C.C.A. 2, 1947), *cert. denied*, 331 U.S. 832 (1947) ; *United States* v. *Meyer*, 113 F.2d 387 (C.C.A. 7, 1940), *cert. denied*, 311 U.S. 706 (1940). See also, 48 Cal. L. Rev. 164 (1960) ; 12 Okla. L. Rev. 163 (1959) ; 43 Iowa L. Rev. 290 (1958) ; 17 N. Dame Law. 35 (1941) ; 24 Minn. L. Rev. 870 (1940). In some places it is acknowledged that the selection of the property to be condemned may be challenged when such selection is manifestly arbitrary, capricious or unreasonable or when fraud or bad faith are shown, *Johnson et al.* v. *Consolidated Gas, Elec. Light and Power Co.*, 50 A.2d 918, 923 (Md. 1947) ; *Patterson Orchard Co.* v. *Southwest Arkansas Corp.*, 18 S.W.2d 1028, 1032

---

[2] For a detailed analysis of this opinion see footnote 50 of the opinion delivered in *Commonwealth* v. *Aguayo*, 80 P.R.R. 534, 583 (1958).

(Ark. 1929); *State* v. *McCook*, 147 Atl. 126, 128 (Conn. 1929); *Wilton* v. *St. Johns County*, 123 So. 527, 535 (Fla. 1929); *City of Charlotte* v. *Heath*, 40 S.E.2d 600, 603 (N.C. 1946), but a careful analysis will reveal that this doctrine derives its basis mainly from cases in which the state has delegated its power to condemn to private entities which are dedicated to public or quasi-public purposes, such as railroad, power and electricity or public service companies. Such is not the case at bar, since it concerns a condemnation undertaken by a public agency for obvious public purposes, that is, for industrial development. Admitting that the purpose is public, *Commonwealth* v. *Fajardo Sugar Co.*, 79 P.R.R. 303 (1956); *McCormick* v. *Marrero, Judge*, 64 P.R.R. 250 (1944); *People* v. *Eastern Sugar Associates*, 156 F.2d 316 (C.C.A. 1, 1946), *cert. denied* in 329 U.S. 772 (C.C.A. 1, 1946), it is not up to us to review the exercise of administrative discretion in the selection of the condemned lands or their adaptability for the specific public use to which they are destined. In *Southern Ry. Co.* v. *City of Memphis*, 148 S.W. 662 (Tenn. 1912) it is stated "But all other incidents of the taking [with the exception of the purpose of the condemnation and the fixing of the just compensation] are political questions, for the determination of the sovereign, and not judicial questions, for the determination of the courts. Selecting the property to be taken, as contradistinguished from similar property in the same locality, determining its suitableness for the use to which it is proposed to put it, as well as deciding the quantity required, are all political questions, which inhere in and constitute the chief value of the power to take. This power would be a vain and empty thing, if the owner could contest the advisability of taking his property rather than his neighbor's, or if he could interpose as a defense of the taking that other property could be found which would suit the public purposes better or that he,

the owner, was of opinion and could prove that the public needed more or less than the quantity proposed to be taken."

But be it as it may, petitioner in this appeal is estopped at this stage of the proceedings from raising the defense we have discussed, since an examination of the record reveals that the withdrawal of the amount deposited by the State as just compensation was sought and the corresponding check for the sum of $121,827.40 was actually drawn in favor of the corporation. This being so, the acceptance by respondent of the amount deposited precludes him from arguing any other issue which does not relate exclusively to the amount of the compensation. *Williams* v. *City of La Grange*, 98 S.E.2d 617 (Ga. 1957); *State* v. *Highway Dept.* v. *H. G. Hastings Co.*, 199 S.E. 793 (Ga. 1938); *Central of Georgia Ry. Co.* v. *Bibb Brick Co.*, 99 S.E. 126 (Ga. 1919). A party may not voluntarily accept the deposited amount as just and reasonable value of its property and continue litigating the right of the State to condemn.

3. Interrogatory No. 13 requires information on the testing of the soil and copy of the reports which we assume refer to the subsoil's quality. Such a request is not inappropriate, *Martínez* v. *Superior Court, supra.*

The decision rendered by the Superior Court, Condemnation Part on June 21, 1961 shall be modified in the sense of dismissing the objections presented to interrogatories Nos. 7, 13, 16, 17, and 18, and petitioner shall be ordered to answer them within the term and under the reasonable conditions fixed by the trial court. As thus modified, it is affirmed.