Butell **ROBINSON** and Donald **Robinson**

v.

**TRANSCONTINENTAL GAS PIPE LINE CORPORATION.**

Edward R. **BREEDLOVE**

v.

**TRANSCONTINENTAL GAS PIPE LINE CORPORATION.**

Civ. A. Nos. 11251, 11252.

United States District Court
N. D. Georgia,
Atlanta Division.

May 27, 1969.

Smith, Cohen, Ringel, Kohler, Martin & Lowe, Atlanta, Ga., for plaintiffs.

Hansell, Post, Brandon & Dorsey, Atlanta, Ga., Webb & Fowler, Lawrenceville, Ga., for defendants.

## ORDER

ALBERT J. HENDERSON, Jr., District Judge.

Plaintiffs, landowners in Gwinnett County, Georgia, filed a suit against defendant, a natural gas pipe line company operating in interstate commerce (hereinafter referred to as Transco), for damages and injunctive relief, alleging that when defendant condemned their lands, pursuant to the power of eminent domain granted by the Natural Gas Act, 15 U.S.C. § 717f(h), without first obtaining a Certificate of Public Convenience and Necessity, required by § 717f(c), it trespassed on and damaged their lands. Defendant Transco responded that it condemned the land pursuant to the power of eminent domain granted it, not by any federal law, but by Georgia Laws, 1929, p. 219, § 1; Ga. Code Ann. § 36–201.1 (Supp.1968), which did not require the federal Certificate of Public Convenience and Necessity, and that, in any event, plaintiffs were estopped, or barred by laches, from maintaining this suit at such a late date, after the pipeline was completed and placed into operation, at considerable expense to Transco. Transco also argued that the issues raised by plaintiffs had been resolved by a final judgment of the Gwinnett Superior Court, and that the doctrine of res judicata also barred the suit. Finally, to plaintiffs' request that this court stay the defendant's presently pending appeal from the condemnation award, defendant argued that this court would violate the provisions of 28 U.S.C. § 2283, if it did so. The court generally agrees with the defendant, as is more fully explained in this opinion, and hereby grants the motion for summary judgment on behalf of Transco.

The only difference in the two suits before the court is that different parcels of land are involved, owned by different plaintiffs, although the parcels are separated only by Level Creek Road. Plaintiffs Robinson ask $75,000.00 in damages; plaintiff Breedlove $100,000.00. All of plaintiffs' contentions are the same; the defendant's responses are the same. Moreover, both plaintiffs and defendant have filed joint briefs in the cases throughout the litigation. Therefore, this order will contemplate the two cases as one, raising necessary distinctions as they occur. The facts as reported herein are generally uncontested.

Plaintiffs own similar parcels of land near Buford, in Gwinnett County, Georgia. Transcontinental Gas Pipe Line Corporation is engaged in the transportation of natural gas in interstate commerce, and in the sale in interstate commerce of natural gas for resale and ultimate public consumption, in the states of Mississippi, Alabama, Georgia and intermediate states to New York, and is, therefore, a natural gas company within the meaning of § 7 of the Natural Gas Act, 15 U.S.C. § 717f. In 1964, Transco began preparation for a lateral extension from a point on its main pipeline near Monroe, Georgia, extending to Ball Ground, Georgia, for the purpose of delivering natural gas to the Atlanta Gas Light Company, in the Atlanta market area. The route of the lateral extension lay across the property of plaintiffs. On December 23, 1964, after plaintiffs had rejected several offers by Transco to buy the land, Transco served on plaintiffs notice of its intention to condemn a right-of-way for its pipe line, pursuant to Ga.Code Ann. § 36–304 (rev. 1962). Three assessors were appointed for each parcel, one each by the parties, and one by the Superior Court of Gwinnett County, Georgia. On January 26, 1965, an award of $15,000.00 was made to the Robinsons, and an award of $11,000.00 was made to Breedlove, for the respective rights-of-way. From these judgments, Transco appealed to the Superior Court of Gwinnett County, alleging that the awards were excessive. This appeal is presently pending. However, a draft in the amount of the award was made payable to Breedlove on April 2, 1965, and to the Robinsons on January 11, 1966.

A Certificate of Public Convenience and Necessity was issued to Transco by the Federal Power Commission on Sep-

tember 9, 1966. On November 18, 1966, a clearing crew first entered the Breed-love property, and, two days later, first entered the Robinson property.

Plaintiffs stated that they had not known that Transco had condemned the lands without first obtaining the certificate, until about December 1, 1966, at which time they immediately filed an answer and a motion to dismiss the condemnation suit. Plaintiffs alleged that, because Transco did not have the certificate, it was a trespasser upon their lands. Transco filed a demurrer to the plaintiffs' answer and a motion to strike. Transco alleged, that because the condemnation proceeding followed the state procedure outlined in Ga.Code Ann., Title 36, there was no requirement or necessity for any Certificate of Public Convenience and Necessity for the condemnation to proceed. It also alleged that plaintiffs were estopped, by their participation in the assessors' hearing and their acceptance of the assessors' award, to contest the right of condemnor to condemn condemnees' property. In addition, Transco alleged that plaintiffs were barred by laches, in remaining idle for a period of nearly two years from December 23, 1964, to December 1, 1966. Finally, Transco alleged that the condemnor's right to condemn could not be raised in a condemnation proceeding, under Ga.Code Ann., Title 36, Chapter 3. On July 11, 1967, Judge Charles C. Pittard, of the Gwinnett Superior Court, denied plaintiffs' motion to dismiss the condemnation proceedings, and granted Transco's demurrer to the answer and motion to strike the answer, " * * * on each and every ground set forth therein * * *."

## THE ISSUES

The questions arise: (1) Whether the Georgia right of eminent domain, Ga. Laws 1929, p. 219, § 1; Ga.Code Ann. § 36–201.1 (Supp.1968), is concurrent with the federal right of eminent domain, 15 U.S.C. § 717f(h), and (2) whether the Certificate of Public Convenience and Necessity is required by §

717f(c), regardless of the power, state or federal, which the defendant elects to apply.

## THE APPLICABLE STATUTES

The Natural Gas Act section 717f(c), which is called into question provides, in pertinent part:

(c) No natural-gas company * * * shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or undertake the construction or extension of any facility therefor, or acquire or operate any such facilities or extensions thereof, unless there is in force with respect to such natural-gas company, a Certificate of public Convenience and Necessity issued by the Commission authorizing such acts or operations * * *.

In addition, the Natural Gas Act, § 717f(h), also provides a power of eminent domain for the condemnation of rights-of-way:

(h) When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of the property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, * * * it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall *conform as nearly as may be* with the practice and procedure in similar action or proceedings in the courts of the State where the property is situated * * *.

However, in addition to the power of eminent domain conferred upon natural gas companies by the above statute, the Ga.Laws, 1929, p. 219, § 1; Ga.Code Ann. § 36–201.1 (Supp.1968), the Geor-

gia Act of 1929, conferred a similar power:

> The power of eminent domain is hereby granted to and conferred upon [foreign and domestic corporations], who are or may be engaged in constructing or operating pipe lines for the transportation and/or distribution of *natural or artificial gas*; and upon [foreign and domestic corporations] who are or may be engaged in furnishing *natural or artificial gas* for heating, lighting, and/or power purposes in the State of Georgia. (emphasis added).

The court observes, parenthetically, that plaintiffs have attempted to create an issue as to whether the above quoted section of Georgia Law is a viable statute. It is true that the statute was omitted, apparently inadvertently, when the Georgia Laws were codified in the Code of 1933. However, any concern as to the effect of this omission was eliminated by the case of Botts v. Southeastern Pipe-line Co., 190 Ga. 689, 10 S.E.2d 375 (1940), when the court stated, in reference to the omission:

> We thus see that at the time of the passage of the act of 1937, sections 1 and 2 of the act of 1929 were both still intact as the law of Georgia, the one conferring power and the other providing method.[1] This we think is a sound statement of law * * *.

190 Ga. at 700, 10 S.E.2d at 381.

■ Actually, the *Botts* case held that a later amendment to § 2 of the Act of 1929, Ga.Laws, 1937, p. 432; Ga.Code Ann. § 36–202 (rev. 1962), providing a method by which *petroleum products companies* could exercise the right of eminent domain, did not establish a right where none had existed before. But the court's dictum, quoted above, pertaining to *natural gas companies* was clear. Plaintiffs' brief fails to recognize that, in this case, the defendant is a natural gas company, and does not deal in petroleum products as did the defendant

in the *Botts* case. Therefore, Georgia Law does confer a right of eminent domain on natural gas companies, such as the defendant. *See also* Harrell v. Southeastern Pipe-line Company, 190 Ga. 709, 10 S.E.2d 386 (1940) (companion case following *Botts*).

## THE LAW

In Oakland Club v. South Carolina Public Service Authority, 110 F.2d 84 (4th Cir.1940), the question before the court was whether the power of eminent domain, under the Eminent Domain Act of South Carolina, was concurrent with the power granted the condemnor, a public service corporation of the State of South Carolina, by § 21 of the Federal Power Act, 16 U.S.C. § 814:

> We think, under [the Federal Power] Act, that the condemnor has an election to exercise the power of eminent domain either under the specified enumerations of the Federal Power Act or under the broader provisions of the Eminent Domain Act of the State of South Carolina.

In his opinion in this case, in the District Court, 30 F.Supp. 334, 341, Judge Myers said: "Looking at the two statutes together, I construe Section 21 of the Federal Power Act not as an exclusive law of eminent domain, not as abridging substantive rights granted to the defendant under the State law, but as complementary to the State law, and as enabling the holder of a Federal Power license to exercise in the Federal courts, as the defendant is doing, the substantive right of eminent domain granted to it under the State law."

We approve this statement by the learned Judge below. The avowed purpose, the history and the philosophy of the Federal Power Act, we think, all seem to confirm this view. The Federal Power Act came to fulfill, not to destroy. It is a remedial statute enacted by the Federal Congress to extend the rights of eminent

---

1. Ga.Code Ann. § 36–202 (rev. 1962).

domain in favor of licensees under the Act. And in statutes of this character, the great dictum of St. Paul: "The latter killeth but the spirit giveth life," seems peculiarly applicable. Again, a careful reading of the Federal Power Act convinces us that it could not have been enacted by the Federal Congress with the idea that it is, in itself, a complete Statute of Eminent Domain. The statute, in connection with eminent domain, is too brief and leaves too many gaps. Had Congress intended this statute as a complete statute of eminent domain, which would serve to exclude the rights of the condemnor under a state law, we are convinced that this Statute would have been far more complete and would have included many provisions which are omitted.

110 F.2d at 86.

Further, the court in Chapman v. Public Utility District No. 1 of Douglas County, Washington, 367 F.2d 163, 167 (9th Cir.1966), considering whether the condemnor was justified in taking a fee, rather than a flowage easement, pursuant to § 21 of the Federal Power Act, stated this dictum:

The substance of the delegated federal power, however, may not be diminished by state law [numerous citations omitted], although the state may, if it sees fit, delegate to the federal licensee broader and additional authority from the state's own power of eminent domain, Oakland Club v. South Carolina Public Service Authority, 110 F.2d 84, 86 (4th Cir.1940).

The court can rely on the Oakland Club and Chapman cases only by analogy, because they did not involve the Natural Gas Act, but involved the Federal Power Act. In this connection, the analogy between the eminent domain powers conferred by the two acts is strengthened by the following statement, which appeared in a report from the Federal Power Commission, reported in 1947 U. S.Code Cong.Serv., p. 1477, concerning the enactment of § 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h):

The proposed amendment provides generally for the exercise of the right of eminent domain by natural-gas companies with respect to necessary rights-of-way in connection with the construction and operation of natural gas pipelines. This proposed amendment is similar to Section 21 of the Federal Power Act which provides for the exercise of the right of eminent domain by licensees regarding dam sites.

The cases cited by plaintiffs for the proposition that a certificate is required before exercise of the concurrent state power of eminent domain fail to fulfill that promise. Colorado-Wyoming Gas Co. v. FPC, 324 U.S. 626, 65 S.Ct. 850, 89 L.Ed. 1235 (1945); Illinois Natural Gas Co. v. Central Illinois Pub. Serv. Co., 314 U.S. 498, 62 S.Ct. 384, 86 L.Ed. 371 (1942). Rather, they generally stand for the proposition that the Federal Power Commission has jurisdiction over interstate gas sales. Neither case addresses itself to the question raised here concerning the effect of a concurrent state power of eminent domain. The other cases cited by plaintiffs are also inapposite.

■ Under the Georgia law, there is no express or implied requirement that a natural gas pipeline company obtain a certificate prior to instituting condemnation proceedings. In addition, the Oakland Club and Chapman cases indicate that § 717f(h), conferring power of eminent domain does not superimpose the prerequisite of a certificate on the Georgia law. The court so holds.

In addition, such a concurrent grant of state power is distinguished from the mere exercise in state court of the federal grant of power by use of state procedure, or a procedure in the District Court, which conforms as nearly as possible with the local state procedure, as contemplated in § 717f(h). See Williams v. Transcontinental Gas Pipe Line Corp., 89 F.Supp. 485 (W.D.S.C. 1950).

The court further observes that § 717f(c), which section also requires a certificate, requires such a certificate only before the "construction or extension of any facilities", or before the company undertakes to "acquire or operate any such facilities or extensions thereof". Webster's Third New International Dictionary (1969) defines facility, in pertinent part, as "* * * something (as * * * machinery, plumbing) that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end." Therefore, the "construction or extension of any facilities" refers to the construction of the pipe line itself rather than the condemnation of the right-of-way upon which the pipe line is to be laid. The same is true as to the acquisition of an extension of a facility. Under this reasoning, § 717f(c) does not prohibit condemnation without first obtaining a federal certificate, of the right-of-way upon which a pipe line is to be established, but only prohibits construction or acquisition before obtaining such a certificate.

Therefore, the court holds that Transco exercised the power of eminent domain granted it by Georgia Laws, 1929, p. 219, § 1; Ga.Code Ann. § 36–201.1 (Supp.1968), and that, after it so elected to proceed under state law, no Certificate of Public Convenience and Necessity, was required by either § 717f(c), or § 717f(h).

The court's decision is fortified by several features of the case. First, the Natural Gas Act provides criminal sanctions for violations, 15 U.S.C. §§ 717s–717u, and does not expressly provide for private civil causes of action for damages. No case has been cited to the court, and the court is not aware by any other means, of any case which indicates that a so-called "Federal Common law" cause of action has arisen, such as has arisen pursuant to § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78(j). See Ruckle v. Roto American Corp., 339 F.2d 24 (2d Cir. 1964); Ellis v. Carter, 291 F.2d 270 (9th Cir.1961); Kardon v. National Gypsum Co., 73 F.Supp. 798 (E.D.Pa. 1947). Therefore, even if the condemnation suit in the state court is, as plaintiffs insist, merely the exercise of the federal power therein, which exercise is expressly permitted by § 717f(h), the remedy is not a private civil remedy for damages, but is a criminal action against defendant by the Attorney General of the United States.

Further, to grant the plaintiffs' request for a stay of the defendant's appeal from the condemnation award, in the Superior Court of Gwinnett County, Georgia, would run afoul of 28 U.S.C. § 2283:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Again, even assuming that the use of the state court was not a concurrent exercise of power, but merely a use of state procedure incident to a federal power, the court is hard pressed to find authorization for a stay of the state court proceedings in the face of the express language of § 717f(h), which permits the use of the state procedure. Where the constitutionality of condemnation proceedings has been contested in the district court, the action has been dismissed, because to grant a stay would violate this section, the proper forum for contesting the constitutionality of such proceedings being the state court. See Baber v. Texas Util. Co., 228 F.2d 665 (5th Cir.1956); Collins v. Laclede Gas Co., 237 F.2d 633 (8th Cir.1956) cert. denied 352 U.S. 1025, 77 S.Ct. 591, 1 L.Ed.2d 597 (1957); Evans v. St. Louis Housing Authority, 226 F.2d 750 (8th Cir.1955). Although the constitutionality of the state condemnation proceeding is not being tested here, the applicability of a state power of eminent

domain, vis-á-vis a federal power, is being tested. Therefore, the cases cited are at least persuasive as demonstrating to the court that it has no jurisdiction to decide the questions presented here. However, the court need not decide this issue, as its decision is based on grounds previously explained.

██ Further, the plaintiffs are estopped under Georgia law, by their acceptance of payment of the award, to contest the condemnation proceedings. See Johnston v. Clayton County Water Authority, 222 Ga. 39, 148 S.E.2d 417 (1966); Williams v. City of La Grange, 213 Ga. 241, 98 S.E.2d 617 (1957); Central of Georgia Ry. Co. v. Bibb Brick Co., 149 Ga. 38, 99 S.E. 126 (1919) (and cases therein cited). The Georgia statute, Ga.Code Ann. § 36–602 (rev. 1962), cited by plaintiffs for the proposition that the acceptance of the amount shall not prevent them from prosecuting an appeal, is not relevant to this proceeding, which is not an appeal. This is a separate suit, brought in another court, some two and one-half years after the ten day period for an appeal would have expired in the state condemnation proceeding, and the cases cited provide an independent ground on which to base summary judgment for defendant.

██ Also, defendant argues convincingly that the doctrine of laches bars plaintiffs' recovery. The court notes that the Notice of Condemnation Proceedings was filed on December 23, 1964, whereas plaintiffs' answer and motion to dismiss in the condemnation suit was not filed until December 1, 1966. Although plaintiffs allege that they had no counsel at the time, and that Judge Pittard of the Gwinnett Superior Court advised them that defendant's power to condemn was "absolute", ignorance of the law was no excuse. Ga. Code Ann. § 37–116 (rev. 1962). Plaintiffs could have addressed a letter to the Federal Power Commission, in order to contest the condemnation proceedings, at any time after December 23, 1964, rather than waiting until April 4, 1967.[2] Finally, the suit in this court was not filed until October 4, 1967, after the pipe was installed and the gas was already flowing. See Holt v. Parsons, 118 Ga. 895, 45 S.E. 690 (1903) in which the court held, under the equitable doctrine of laches, that a delay of more than three months following a public furor over the location of a courthouse and the publication of the company who had accepted the bid for building the courthouse, barred the plaintiff from a suit to enjoin the building of the courthouse, when his suit was filed after considerable expense and effort had been expended in the building of the building. *See also* Black v. Barnes, 215 Ga. 827, 114 S.E.2d 38 (1960) (plaintiff estopped to enjoin building of apartment building after three months while defendant made substantial expenditures).

Because of the court's decision in the matter, it need not consider Transco's contention that the dismissal by the Superior Court of Gwinnett County of the plaintiffs' answer and motion to dismiss was a final judgment, within the meaning of Georgia law, thus barring the plaintiffs from bringing this suit by the doctrine of res judicata.

For the above reasons, the motion for summary judgment is granted in both of the above cases for the Defendant, Transcontinental Gas Pipe Line Corporation.

2. On April 4, 1967, plaintiff Donald Robinson addressed a letter to the Federal Power Commission, inquiring about Transco's right-of-way. On April 14, 1967, the Commission replied, stating that the Certificate of Public Convenience and Necessity was obtained on September 9, 1966, and that the pipe line was complete and in service by March 1, 1967.