## S93A0140. CLINE v. McMULLAN.
### (431 SE2d 368)

FLETCHER, Justice.

John McMullan petitioned the superior court to condemn a private way over the lands of Pierce Cline as authorized by Art. I, Sec. III, Par. II of the Constitution of the State of Georgia (the Constitution) and OCGA § 44-9-40 et seq. The trial court held a hearing pursuant to OCGA § 44-9-43 and determined that the petition was reasonable. A board of assessors was appointed and the board awarded damages to Cline for the value of the property sought by McMullan for the private way. McMullan appealed this award to the superior court for a jury trial, but he did not tender the amount of the award prior to filing the appeal. Cline filed a motion to dismiss the appeal, contending that the applicable Code sections, when read in light of *Woodside v. City of Atlanta*, 214 Ga. 75 (103 SE2d 108) (1958), require tender of the assessors' award as a condition precedent to the filing of an appeal. The trial court denied Cline's motion to dismiss, and we granted his application for interlocutory appeal to review that ruling.[1] We affirm.

1. The power of eminent domain is derived from the Constitution and there are two provisions that allow the exercise of the condemnation power. The right to exercise the power of eminent domain for public purposes is provided in Art. I, Sec. III, Par. I of the Constitution and one of the procedures adopted by the legislature to define how such power is exercised is codified in Art. 1, Chapter 2 of Title 22 of the Official Code of Georgia. Authority to petition for the grant of a private way is provided in Art. I, Sec. III, Par. II of the Constitution and the procedure to obtain a private way is codified in Art. III, Chapter 9 of Title 44. This case involves the procedure for obtaining a private way.

Title 44 creates a statutory procedure by which an individual can obtain a private way across property owned by another. Title 44 adopts some, but not all, of the procedures found in Art. 1, Chapter 2 of Title 22, which sets out one of the procedures provided for condemnation for public purposes by a public body or corporation authorized to exercise the power of eminent domain.

The issue before this court concerns the proper procedure to be used for appeals from a board of assessors' ruling in a Title 44 private way proceeding. Regarding appeals Title 44 provides:

Either party shall have the right to appeal from the award of the board of assessors to a jury in the superior court; and

---

[1] Jurisdiction of this case lies in the Court of Appeals, but this court elected to hear this appeal in the interest of judicial economy.

such appeals shall be made in accordance with and shall be controlled by Part 5 of Article 1 of Chapter 2 of Title 22.

OCGA § 44-9-44. The key phrase in this statute is "such *appeals* shall be made . . . ." Title 44 refers only to the portion of Part 5 of Title 22 that sets out the method of appeal. Part 5 contains provisions *besides* those that set out the procedure for appeals, such provisions being specifically tailored to address issues peculiar to exercise of the power of eminent domain for public purposes. These latter provisions of Part 5 are not designed to be applied to the grant of private ways and were not incorporated into Title 44.

The only portion of Part 5 of Title 22 that applies to appeals under Title 44 is found in OCGA § 22-2-80 which directs that if:

> either party is dissatisfied with the amount of the assessors' award, he or they may, within ten days from the time the award is filed, enter in writing an appeal from the award to the superior court of the county where the award is filed.

The above language from OCGA § 22-2-80 is the only portion of Title 22 that describes how appeals "shall be made" from an award made by a board of assessors.

2. Cline maintains that his property has been "taken" and that before McMullan can appeal, he must pay the compensation set by the board of assessors. Cline bases this contention on *Woodside*, which held that under Title 22 the condemnor of private land for public use is required to tender the damages prior to appeal. Cline argues that since *Woodside* interprets Title 22, and the private ways scheme (Title 44) adopts the Title 22 procedure, the holding in *Woodside* also applies to Title 44. Although this may appear to be a logical interpretation, an examination of the language of Title 44 and the constitutional basis for *Woodside* reveals that tender was never meant to be a pre-condition to appeal in a private way action.

OCGA § 44-9-47 outlines when and how a private way is granted to a petitioner:

> With respect to the judgment of the court in such case, any party may have all remedies provided by law, including a motion for a new trial, a motion for an appeal, a motion for judgment on the pleadings, or a motion for judgment notwithstanding the verdict. Before the judgment becomes final and after the determination of any motions or appeals, the compensation fixed by the jury shall be paid in cash into the registry of the court by the applicant . . . .

Thus, under the plain language of the statute, the petitioner does not

obtain the property until the judgment becomes final, and a final judgment cannot be entered until all appeals are completed and compensation has been paid.

*Woodside* is predicated on the fact that the condemnor in a public purpose exercise of eminent domain has obtained the right to the property before the appeal is filed. Thus, the constitutional mandate that "adequate compensation" must be "first paid" (Art. I, Sec. III, Par. I) in public purpose cases requires the tender before appeal because the condemnor's right to the property interest is fixed. The critical difference between *Woodside* and this case, which involves a private way, is that *Woodside* is based on a constitutional provision that, although similar, is not the same as the one that authorizes private ways. The constitutional provisions found in Art. I, Sec. III, Pars. I and II provide that the property right passes from property owner to petitioner at different times in such proceedings depending on whether the proceeding is a public taking (Par. I) or a petition for a private way (Par. II). With regard to eminent domain taking of private property for public purposes, Art. I, Sec. III, Par. I provides that "private property shall not be *taken* or *damaged* . . . without just and adequate compensation being first paid." (Emphasis supplied.) In comparison, Art. I, Sec. III, Par. II provides that "private ways *may be granted* upon just and adequate compensation being first paid . . . ." (Emphasis supplied.)

The difference in the language of these two constitutional provisions is the key to understanding when the right passes to the petitioner in each type of condemnation. Property which is subject to eminent domain for public purposes may be "taken." However, a "private way" is not "taken" but must be "granted" and that "grant" can only occur after all of the rights have been finally established, the compensation is paid and the court makes such "grant" by final judgment. The public purpose condemnor has the right to enter and use the property condemned at no risk because the fact that such a condemnor has obtained "title" to the subject property interest will never change on direct appeal. In contrast, a petitioner for a private way has no right to enter the land and put it to use prior to the post-appeal entry of a final judgment (and payment of compensation) and would be at risk to have damaged the property owner if later appeal changed the location, width or necessity of the private way. Requiring pre-appeal payment forces the petitioner for a private way to pay for that which he has not obtained and may not ever obtain. The difference in the language of the two constitutional provisions, one referring to a taking of private property for public use and the other to a granting of a private way, explains why the legislature adopted the language in OCGA § 44-9-47 requiring payment of the just and adequate compensation before the final judgment *granting* a private way

is entered by the court, but *after* all appeals have been exhausted.

In contrast to Title 22, where the only issue on appeal from the board of assessors to a jury in the superior court is a de novo review of the appropriate level of damages, under Title 44, the width or location of the private way can be altered or even the necessity of the private way can be denied by the jury on appeal. Since nothing about the private way is fixed, the condemnor seeking the private way does not obtain any rights in the land until after all appeals have been exhausted and just compensation has been paid. That the granting of a private way does not occur until appeals have been exhausted is consistent with OCGA § 44-9-47 wherein the petitioner for a private way is directed to pay the valuation of the condemned property into the registry of the court *"after* the determination of any motions or appeals . . . ." This interpretation of the appellate procedure of private ways is also consistent with this court's decision in *Arnold v. Selected Sites, Inc.*, 229 Ga. 468 (192 SE2d 260) (1972).

Title 44 provides many safeguards for the property owner which are not provided to the property owner in eminent domain proceedings for public purposes. While an owner whose property has been condemned for a public purpose has forever lost the right to the property and can only contest before the jury the amount of the compensation received for the property,[2] an owner in a private way action has the opportunity to challenge the necessity, location and width of the private way. Additionally, the private way property owner can extinguish all claims to the private way if the petitioner fails to timely pay the adequate compensation (OCGA § 44-9-47). In comparison, the property owner in a public purpose condemnation is limited to collecting the compensation from the condemnor (OCGA § 22-2-83). Because the protection of the rights of the property owner are foremost under the constitutional provision pertaining to private ways and the statutory scheme provided by the General Assembly is designed to fully protect such rights, we hold that no property right is taken from a property owner, nor vested in a private way petitioner, until after all of the rights have been finally established, the compensation is paid and the court makes such a "grant" by final judgment.

*Judgment affirmed. All the Justices concur, except Clarke, C. J., Benham and Sears-Collins, JJ., who dissent.*

SEARS-COLLINS, Justice, dissenting.

The majority opinion in this case is unwise and contrary to Art. I, Sec. III, Par. II of the 1983 Georgia Constitution, in that it allows the grant of a private way without just and adequate compensation being

---

[2] Note that an owner does have the right to file a *collateral* attack.

first paid. It is for this reason that I dissent.

In reaching its conclusion that the trial court's order finding the private way reasonable, along with the assessors' award, do not amount to a grant of a private way within the meaning of Art. I, Sec. III, Par. II of the Constitution, the majority fails to analyze the effect of the trial court's order and the assessors' award and fails to adhere to the applicable principles of constitutional construction. The specific issue is whether a private way is granted within the meaning of Art. I, Sec. III, Par. II when a board of assessors awards damages for the private way, or only when all appellate procedures have concluded. I conclude that a private way is granted within the meaning of the Constitution when the board of assessors makes its award.

1. In determining whether a private way was granted within the meaning of the Constitution at the time the assessors made their award, we must first examine the effect of the trial court's judgment and the assessors' award. Unquestionably, the trial court's judgment and the assessors' award are judgments of "tribunal[s] competent in law to fix the rights and liabilities of the parties." *Woodside v. City of Atlanta*, 214 Ga. 75, 82 (103 SE2d 108) (1958). These tribunals, at the appellee's behest, specifically granted the appellee a private way. That grant is *binding* on the parties unless and until a contrary disposition is reached in a direct attack thereon (e.g., in an appeal), *Woodside*, 214 Ga. at 82; *McGreggor v. W. L. Florence Constr. Co.*, 208 Ga. 176, 177-178 (65 SE2d 809) (1951), and it " 'remains operative with all of its incidents, save in so far as it is incapable of enforcement' " because of *the appellee's* appeal to superior court. *Tilley v. King*, 193 Ga. 602, 604 (19 SE2d 281) (1942).[3] Accord *Hodges v. South Ga. Nat. Gas Co.*, 111 Ga. App. 180, 181 (141 SE2d 182) (1965). If the appellee successfully maintains the grant of the private way on appeal, the lien of judgment will be binding from the date of its original rendition, stripping the landowner of valuable rights at that time, id. at 604. Thus, the private way granted to date clearly encumbers the appellant's property. Id.; *Woodside*, 214 Ga. at 83. For these reasons, the fact that a condemnee may contest the necessity for the private way on appeal to superior court does not negate the fact that a private way has previously been granted or in any way render that grant a nullity.

2. In view of the effect of the trial court's judgment and the assessors' award, the issue may be phrased as whether a private way is granted within the meaning of Art. I, Sec. III, Par. II when a private

---

[3] Although *Tilley* was a de novo appeal to superior court from a probate court judgment, it has been held that appeals from assessors' awards are governed by the same rules. See *State Hwy. Bd. v. Long*, 61 Ga. App. 173 (6 SE2d 130) (1939); *Central of Ga. Power Co. v. Cornwell*, 139 Ga. 1, 6 (76 SE 387) (1912).

way is granted pursuant to an initial binding judgment that encumbers the condemnee's property, or only when all appellate procedures have concluded.[4] For the following reasons, I would hold that a private way is granted within the meaning of the Constitution when the initial binding judgment grants the private way.

(a) In construing the meaning of Art. I, Sec. III, Par. II, certain principles of constitutional construction must be kept in mind. First, the language of this constitutional provision is paramount and mandatory, *Woodside*, 214 Ga. at 80, and "neither the legislature nor the courts have any right to restrict, evade, or violate it in the slightest degree," id. Moreover, the grant of private ways under the power of eminent domain is one of the highest powers that can be given to individuals in the state, *Thomas v. City of Cairo*, 206 Ga. 336 (57 SE2d 192) (1950), and is in derogation of the common law, see 72 CJS, Private Ways, § 6. Art. I, Sec. III, Par. II is remedial in nature, protecting citizens from the unfettered exercise of that power, and must be construed most favorably to the landowner. See generally *Mayor &c. of Macon v. Daley*, 2 Ga. App. 355 (3) (58 SE 540) (1907); *Chattanooga R. Co. v. Philpot*, 112 Ga. 153, 154 (37 SE 181) (1900).

(b) Examining the constitutional provision regarding private ways, we see, first, that it does not expressly provide that a private way is not granted until the judgment first granting the private way is no longer subject to an appeal. The drafters of the Constitution clearly knew how to make such a requirement explicit, as they did so with regard to the taking of private property for *public* road or street purposes in Art. I, Sec. III, Par. I (b) of the Constitution.[5] Instead, Art. I, Sec. III, Par. II states without qualification that a "private way may be granted upon just and adequate compensation being first paid" and is thus broad enough to encompass private ways granted pursuant to initial binding judgments that are stayed only by the condemnor filing a notice of appeal. Indeed, such a meaning is mandated by a broad construction of Art. I, Sec. III, Par. II. The right to the use

---

[4] The appellee argues that in *Arnold v. Selected Sites, Inc.*, 229 Ga. 468 (192 SE2d 260) (1972), we held that appeals from assessors' awards in private way condemnation actions did not violate the just compensation clause applicable to private way condemnations. The appellee's interpretation of *Arnold* is incorrect. In *Arnold*, no constitutional attack was made upon the statutes providing for the appeal to superior court from the assessors' award. Instead, the appellee contended that Code Ann. § 83.106.1 (now OCGA § 44-9-47) was unconstitutional because, at that time, it granted the condemnor 60 days following the determination of any motion for new trial or appeal in which to pay the compensation fixed by the jury on appeal to superior court. We held that this statute violated the just compensation clause applicable to private ways, but that it was separable from the other statutes prescribing the procedures for the grant of private ways so that the other statutes did not have to fall with it. For these reasons, *Arnold* is not precedent for the proposition urged by the appellee.

[5] That provision provides that "just and adequate compensation . . . need not be paid until the same has been finally fixed and determined as provided by law."

and enjoyment of one's property is one of the most sacrosanct and fundamental rights in this country. It would be inconsistent with the spirit of Art. I, Sec. III, Par. II, which was designed to protect that right, to permit a person to obtain a binding judgment, with its attendant encumbrances, granting a private way across the land of another and then to insist on his right to appeal without paying for the preceding grant. This prospect is especially egregious when the appellate process could take years, as evidenced by this case, in which no jury trial has even been held in superior court.

3. To conclude that a grant has not occurred and that *Woodside*, supra, 214 Ga., is not on point, the majority states that the condemnee in private way cases may contest necessity on appeal to superior court, but the condemnee in public purpose cases such as *Woodside* may not.

> The public purpose condemnor has the right to enter and use the property condemned at no risk because the fact that such a condemnor has obtained "title" to the subject property interest will never change on direct appeal. . . .

> In contrast to Title 22, where the only issue on appeal from the board of assessors to a jury in the superior court is a de novo review of the appropriate level of damages, under Title 44, the width or location of the private way can be altered or even the necessity of the private way can be denied by the jury on appeal.

Majority opinion, pp. 323, 324.

The proposition that the public condemnor's right to condemn the condemnee's property may not be contested following the assessors' award is simply erroneous. In condemnation cases under Art. 1 of Title 22, a condemnee does have the right to file an equitable action contesting the taking, including but not limited to the necessity therefor, following the assessors' award. See *Williams v. City of LaGrange*, 213 Ga. 241 (98 SE2d 617) (1957); *Johnston v. Clayton County*, 222 Ga. 39 (1) (148 SE2d 417) (1966). Moreover, in condemnation cases under Art. 3 of Title 22, the Article under which the condemnor in *Woodside v. City of Atlanta*, supra, 214 Ga., was proceeding, the condemnee may challenge the condemnor's right to the taking on appeal. The jury determines damages and the trial court determines all factual and legal issues relating to what is to be taken. *DeKalb County v. Jackson-Atlantic Co.*, 123 Ga. App. 695, 697-698 (182 SE2d 160) (1971). For this reason, the majority errs in distinguishing *Woodside* from the instant case. Moreover, I find it contrary to the spirit of Art. I, Sec. III, Par. II and to the decision in *Woodside*

to conclude that a private citizen may do what a public condemnor may not do — encumber a person's property with the grant of a private way for an extended period of time without paying just and adequate compensation therefor.

4. Having determined that a private way has been granted at the time of the assessors' award, I will next examine what payment the Constitution requires for the private way that has been granted to date. I conclude that, as the condemnee has the right to contest the necessity for the taking in superior court, the condemnor must pay the assessors' award into the registry of the superior court for the benefit of the condemnee as a condition precedent to his or her appeal. See *Williams*, supra, 213 Ga.; and *Johnston*, supra, 222 Ga. (in public purpose condemnation cases, if condemnee files equitable action contesting necessity, the condemnor must pay assessors' award into registry of court). If the condemnee does not contest the necessity for the private way on appeal, as Cline does not (he has not contested the necessity from the beginning), then the condemnee may petition the superior court for disbursement of the funds. The reason is that at that time the issue of the necessity will be settled, as the condemnee may not raise any issue on appeal from superior court that he or she did not raise in superior court. See *Westwind Corp. v. Wash. Fed. Savings &c. Assn.*, 195 Ga. App. 411 (1) (393 SE2d 479) (1990). However, if on appeal to superior court the condemnee does contest the necessity for the private way, the proceeds will remain in the registry of the superior court pending further appeal.

As for the condemnor's right to abandon under OCGA § 44-9-47, I would hold that the condemnor may still maintain that right after the conclusion of all appeals. If the condemnor elects to abandon the private way, and if funds have previously been disbursed to the condemnee, then the condemnee will be required to refund the money to the condemnor. See generally OCGA § 22-2-82.

5. For the foregoing reasons, I conclude that a private way is granted within the meaning of Art. I, Sec. III, Par. II of the Constitution when the assessors' award is entered. I further would hold that Art. I, Sec. III, Par. II required the appellee to pay the assessors' award to the clerk of court as a condition precedent to his appeal to superior court. Accordingly, I conclude the trial court erred by failing to grant the appellant's motion to dismiss the appellee's appeal to superior court, and I would remand the case for the appellee either to decline to pay the assessors' award and thus abandon the right of way under OCGA § 47-9-47 or to pay the award and thus retain the right of way.

I am authorized to state that Chief Justice Clarke and Justice Benham join in this dissent.

DECIDED JULY 12, 1993 —
RECONSIDERATION DENIED JULY 30, 1993.

*Alexander & Royston, James B. Alexander,* for appellant.
*Crudup & Hendricks, J. Gardner West,* for appellee.